TEE, J.
It is well settled that if one have judgment with a cesset executio for a given time, he may within a year and a day after the expiration of the agreed time, take out his execution without scire facias. 4 Com. Dig. 257, “Execution,” I 4; Long v. Morton, 2 Marsh. R. 39; Underhill v. Devereux, 2 Wms. Saund. 72 c, n 4; Hiscocks v. Kemp, 3 Adol. & Ell. 676; United States v. Harford, 19 John. R. 172; Nicholson v. Howsley, 5 Litt. Sel. Cas. 300; Eppes v. Randolph, 2 Call 125, 186. So if the defendant bring error and thereby hinder the plaintiff from taking execution within the year, and the plaintiff in error be nonsuit or the judgment affirmed, the defendant in error may proceed to execution after the year without scire facias, because the writ of error is a superse-deas to the judgment, *and the plaintiff must acquiesce till he hears the judgment above. 3 Bac. Ab. (Wilson’s ed.) “Execution,” H, p. 724; 8 Ibid. “Scire facias,” C, p. 601; Winter v. Lightbound, Stranger’s R. 301.
The reason assigned for this is that the cesset executio being with the consent and for the benefit of the defendant, and the writ of error being his own act, he should not take advantage of them, nor could he be surprised by the delay because that delay was in fact referable to himself. And this reason *730 applies with equal force where the defendant arrests the execution of the judgment by an injunction. Hence,' the same rule should apply in the latter case. It is true in some of the earlier English cases it was held that where execution was stayed for a year or more by injunction, the plaintiff could not take execution upon its dissolution, but was put to his scire facias. Booth v. Booth, 1 Salk. R. 322; Winter v. Lightbound, Strange’s R. 301. The reason given is that the court of chancery not being a court of record, its injunction is not a matter of which the court of law will take notice. But this doctrine has long since been exploded even in England, and courts of law will take notice of injunctions and other proceedings, in chancery when properly brought to their consideration. And accordingly it is now held that where execution has been stayed by injunction, the plaintiff may sue out execution within one year after it shall have been dissolved, without scire facias. Michell v. Cue, 2 Burr. R. 660; Gibbes v. Mitchell, 2 Bay’s R. 120; Noland v. Cromwell, 6 Munf. 185; United States v. Harford, 19 John. R. 172; Smith’s adm’r v. Charlton’s adm’r, 7 Gratt. 425. Indeed the reason-on which the earlier English doctrine rested never did exist in Virginia ; for the courts of chancery of this state have always been courts of record, the same as the courts of law.
It is clear, therefore, that where the plaintiff is prevented *by injunction from proceeding to execution, he may at any time within the year after its dissolution, sue out execution without.scire facias ; and this, where the parties remain unchanged, whether the injunction have continued for more or less than ten years from the date of the j udgment. A scire facias is no more necessary in the former case than in the latter, the reason for dispensing with it being exactly the same in both : Nor will the statute of limitations forbidding execution after thé expiration of ten years from the date of the judgment apply, because notwithstanding the general terms employed, it must be understood to embrace only the cases in which the party may levy his execution if he will, and not those in which he is positively prohibited by legal process from so doing; and where the injunction continues for more than ten years, the plaintiff is equally restrained from levying his execution during the whole period as during the year after the date. But where a change of parties must be made in consequence of the death of the plaintiff or defendant, a scire facias for that cause is rendered necessary, and it is insisted that wh'ere the defendant is dead, the scire facias to revive against his personal representative must be sued out under the express terms of our statute, within five years after the qualification of such representative, notwithstanding the pendency of the injunction during the whole period. I do not think this can be correct. It is true in Richardson’s adm’r v. Prince George Justices, and Poindexter’s adm’r v. Same, 11 Gratt. 190, it was held that where either party fo a judgment died pending an injunction, a scire facias might be sued out to revive the judgment without breach of the 'injunction. The reason is that as the plaintiff in the judgment is entitled upon the dissolution of the injunction to stand in the same situation in which he stood when it was allowed, unless he or his representative could revive *the judgment pending the injunction, he would not be able upon its dissolution to issue his execution, but would be compelled to wait until he had sued out his scire facias, and prosecuted the same to judgment. ■ And so for his benefit it was held that the plaintiff or his representative might sue forth his scire facias and revive the judgment without a breach of the injunction. But it was not intimated nor intended to be intimated that he was under any necessity to do so in order to preserve his right to enforce the judgment upon the dissolution of the injunction. The plaintiff whose judgment is enjoined may sue forth his execution within the year, and renew the same from time to time, so that he take care the same be not placed in the hands of the sheriff for service ; but he is not bound to do so. He may in the former case defer to issue his scire facias, and. in the latter, to issue any execution until the dissolution of the injunction, and the statute of limitations is suspended until that period. Nor can the defendant be heard to complain, because it was his own act which interposed the obstacle to the enforcement of the judgment.
That this is the correct doctrine I think very clear, independently of the provision of the Code, ch. 186, § 13, p. 710. This section, after declaring that no execution shall issue nor any scire facias or action be brought on a judgment after the time prescribed by the previous section, provides that.in computing the time, any time during which the right to sue out execution on the judgment is suspended by the terms thereof, or by legal process, shall be omitted. Now, clearly an injunction is legal process within the meaning of this provision, and of course every case coming within its operation, the whole period during the pendency of the injunction is to be omitted in computing the time within Which the scire facias must be issued to avoid the bar. Nor do I perceive any reason why *this section should not be held to apply to the case of a judgment recovered previously and an injunction pending at the time the Code took effect. The 19th section of chapter 149, p. 594, provides, in regard to actions, suits, &c., pending the day before the commencement of the Code, that they should be subject to the same limitation as if that Code had not been enacted; and where not so pending, if the right to prosecute the same should exist on that day for a certain number of years prescribed by any statute, the same should be prosecuted within the same time as the same might have been if that chapter had not been enacted. The 13th section of chapter 186, p. 710, provides that the above named 19th section (with others) shall apply to the right to bring such action or scire facias (as therein mentioned) in like manner as to any *731 right, action or scire facias mentioned in said 19th section. The effect of the whole taken together would seem to be to preserve as to all actions and right to action existing when the Code took effect, the pre-existing periods of limitation, but prescribing as to all as well those just mentioned as those thereafter accruing, a mode by which in certain cases the time of limitation is to be computed, and which excludes from such computation the time during which (in the case of a judgment) the right to sue out execution should be suspended by the terms thereof or by legal process, thus giving to the rule deducible from the cases the sanction of statutory enactment.
In this case the judgment was rendered on the 26th of March 1806, and the injunction was obtained on the same day ; and the cause appears to have remained pending in the County court, and afterwards in the District court of chancery at Staunton, and again in the County court, to which it had been remanded, until the Kovember term 1851, when an order was made declaring the injunction to stand dissolved unless *revived by the next December court; and not having been so revived, at the February term 1852, the bill was dismissed. The death of the parties occurred pending the injunction, but the scire facias was sued out in March 1852. I think, therefore, the statute of limitations was no bar, and that the demurrer to the replication was properly overruled.
It is objected, however, that when this demurrer was overruled, an issue should have been made up upon the replication before the trial of the issues on the pleas of payment. But it was the fault of the plaintiff in error himself that it was not done. He neither offered to withdraw his demurrer nor tendered any rejoinder to the replication, and the court could only pass on to the trial of the issues which he chose to make.
Another objection is, that the Circuit court improperly permitted the judgment to go in evidence to the jury, it appearing that it was a judgment against Hutsonpiller alone, whilst the scire facias set out a judgment against him and one Patser Huber jointly. From the record sent up to this court it would appear that the judgment was against Hut-sonpiller alone ; but a doubt being suggested as to its correctness, the original record has been brought before us for examination, by consent of parties. From this it appears that the capias was returned “executed” as to Hutsonpiller, and “kept off by force of arms” as to Huber. At the next rules, a common order was entered, which was subsequently confirmed. At the March court following, Hutsonpiller appeared and pleaded payment, and at the March term 1806, this plea was waived and judgment by non sum informatus. By the law as it stood at that day (act of 28th January 1800) a party might proceed on the return “kept off by force of arms” as if the process were executed; hence the common order and its confirmation may well be held *to apply to both defendants. But the record being merely brief minutes of the clerk, it is difficult to determine whether the office judgment was set aside as to both defendants or Hutsonpiller only ; arid if the latter, then the judgment against Huber must have been at March court 1805 instead of 1806. But the question of variance does not in fact arise in the case. To raise it, the party should have pleaded nul tiel record, which would have put the plaintiff in the scire facias to the production of a record such as was alleged; or he should, have craved oyer of the record, and demurred. Wood v. The Commonwealth, 4 Rand. 329. In this case he did neither, but pleaded payment, which was confession of the record, and an avoidance by new matter. The plaintiff was not therefore called on to produce the record ; and any variance between the scire facias and that which he did produce was immaterial. It is not like an action of debt upon a bond, in which upon the plea of payment the plaintiff is required to produce the bond. Moore v Fenwick, Gilm. 214. The reason is that inspection of the bond is necessary to ascertain the dates and amounts of any credits that may be endorsed, with a view to the calculation of the amount for which, under our statute, judgment is to be given. This reason has no application to the case of a record.
The remaining grounds of error assigned founded upon the instruction given to the jury, may be considered together.
The parties stood upon issues of payment in a court of law, and such a court possesses no discretionary power to refuse its aid to enforce a claim out of deference to any supposed public policy forbidding the assertion of stale demands. All that it could do was to instruct the jury as to the rules of law and evidence by which it was to be governed in considering the case. The court must of course in every case take *care not to encroach upon the functions of the jury by withdrawing from it any question of fact proper for its determination : and if the instruction given in this case admitted of the construction which has been placed upon it, it might be obnoxious to the charge of improperly trenching upon the province of the jury. Such I think, however, is not its fair construction. Presumptions are said by a learned writer to be of two kinds, legal and artificial, and natural. The former derive from the law a technical or artificial operation and effect beyond their mere natural tendency to produce belief. The latter act merely by virtue of their own natural efficacy. 3 Stark. Ev. 1235. The writer then illustrates by the case of a bond which has been suffered to stand for twenty years or upwards without payment of interest or other acknowledgment of its existence. In such a case, satisfaction of the bond is a legal presumption. But if a shorter period, even a single day less than twenty years has elapsed, the presumption of satisfaction from mere lapse of time does not arise, though in the latter case it may be inferred, where other circumstances render it probable ; but in this case the mere lapse of time possesses no artificial or arbitrary operation, but is left to its mere natural tendency to convince *732 the minds of the jury that the debt has been paid. This distinction is recognized by other writers. 2 Greenl. Ev. § 528 ; Best on Presumptions, § 16, p. 18, § 137, p. 187, § 38, p. 45. See also, Eldridge v. Knott, Cowp. R. 214; Hillary v. Waller, 12 Ves. R. 239, 266.
Now, in the case of a judgment upon which no proceedings have been had for twenty years or upwards, the legal presumption could only arise where the party was at liberty to enforce it if he would. Where, however, his hands are tied and he is expressly prohibited to take any measure for that purpose by an injunction obtained by the defendants themselves, and the obstacle *thus interposed continues during the whole period, this arbitrary and artificial presumption would not arise from the mere lapse of time, however much that might weigh with the jury by its natural tendency, in connection with the other circumstances, to convince their minds thaf the debts had been satisfied. And it is to' this distinction that the judge should be understood as alluding when he speaks of the effect of the pendency of the injunction upon the “legal presumption of payment,” which would otherwise have arisen from the lapse of time. Thus construed, I do not perceive that the instruction is obnoxious to any well founded objection. Whether in any given case this legal, artificial presumption arises, is, I presume, matter of law on which the court may pass, and in a case in which the delay to proceed has grown out of the act of the defendants themselves, no such legal presumption can be raised in their favor. The effect of the injunction is, as we have seen, to take the case out of the operation of the express statutes of limitation ; and it cannot be less potent to withdraw it from the operation of the artificial or legal presumption of payment during the same period.
But whilst the court thus instructed the jury that this legal presumption would not arise, it said nothing from which they should have inferred that they were not at liberty to look into the whole circumstances of the case in connection with the length of time which had been suffered to elapse, and from them to infer and find the fact of payment. It left the time elapsed to have its proper and natural tendency to lead them, in connection with the death of the parties, the failure to take measures sooner to have the injunction dissolved, the ability of the parties to pay, and all the other circumstances of the case, to that conclusion. It placed the case during the pendency of the injunction on the same footing as if there had been no injunction, but *the lapse of time had been less than the exact period of twenty years; and in this it seems to me there was no error. If the party apprehended that the jury might mistake the true meaning of the instruction, and erroneously suppose they were restricted from passing on the question of payment upon a review of the whole circumstances of the case, it was his duty to apply to the court for a proper supplemental instruction, which would have guarded against . any such misapprehension, and which we cannot suppose would have been refused.
I am of opinion to affirm the judgment.
MONCURE, J.
I am of opinion that the Circuit qourt erred in instructing the jury “that the pendency of the injunction cause repelled the legal presumption of payment which would have arisen from lapse of time, if said injunction had not been pending.” Under all the circumstances of the case, I think the jury ought to have presumed that the debt had been paid, and ought to have found a verdict for the defendant. Forty-six years elapsed between the date of the judgment and the scire facias; during which period both parties to the judgment died. For thirty-eight years the injunction case was on the sleeping docket of the County court, and not an order was taken in it; not even an order of continuance. Thirty-one years elapsed after the obligee’s administrator qualified, and before he made a motion in the case. There was nothing to repel the presumption of satisfaction arising from this long lapse of time and this gross laches of the obligee and his representative but the bare pendency of the.injunction case, if pen-dency it can be called. If that fact be sufficient to repel the presumption in this case, it would be so in .any case ; and no lapse of time, however long, no laches however gross, would be a sufficient foundation for the *presumption of satisfaction of a judgment during the pendency of an injunction thereto. The pendency of the injunction in this case, so far from weakening, seems to me to strengthen the presumption of satisfaction of the judgment. If there had been no injunction, the law would have presumed such satisfaction from the mere lapse of time. Here the presumption seems to be strengthened by the additional facts that equity was expressly reserved on the face of the judgment ; that on the very day on which it was rendered it was enjoined on the ground that it had been satisfied, and that no step was taken to have the injunction dissolved for so long a period after the cause was set for hearing. What other inference can be drawn from these facts than that the obligee and his representative did not move sooner in the matter because they believed that the injunction was well founded ; or because the balance of the debt had been paid by the collection of the balance of the order mentioned in the bill of injunction, or otherwise? How unjust and contrary to public policy it would be, after so great laches on the part of the obligee and his representative, to require the representative of the obligor to prove actual payment of a debt of which he had probably no personal knowledge, and when the means of doing so had either ceased to exist or been greatly diminished by lapse of time.
But it is said that the court only instructed the jury that the legal presumption of payment arising from lapse of time was repelled by the pendency of the injunction ; and that the jury were still at liberty to make an actual presumption of payment, from all the circumstances of the case, including lapse of time as one of them.
*733 There can be no doubt, I think, but that the instruction of the court produced the verdict of the jury for the plaintiff. I think the instruction was wrong- in *itself ; and even if right in itself, or in the abstract, it misled, and was calculated to mislead, the jury. I think it was wrong in itself. The pendency of the injunction for more than thirty-eight years, without any step being taken in the case, did not repel but rather strengthened the legal presumption of payment arising from lapse of time. At most, it could only have tended to repel the presumption, and should have been left to the jury as evidence to be weighed by them. And the court invaded their province in telling them that it repelled the presumption.
But at all events, it misled the jury, and was calculated to have that effect. They could not be expected to know the difference between legal presumptions and actual presumptions ; and when told that the legal presumption of payment arising from lapse of time was repelled by the pendency of the injunction, they naturally inferred that unless there was some other evidence of payment, they must ñnd a verdict for the plaintiff. If the court had been of opinion that while the legal presumption was repelled by the pen-dency of the injunction the jury might still presume payment from the mere lapse of time, notwithstanding the pendency of the injunction, it should so have told the jury ; and would, I think, so have told them. It is obvious that the court is not of that opinion.
I incline also to think that the circuit court erred in reversing the judgment of the county court, and that the act of limitations was a bar to the scire facias. At least forty years elapsed between the death of the defendant in the judgment and the date of the scire facias to revive it against his administrator, who qualified soon after his death. There was nothing to prevent the suing out of the scire facias before. The pendency of the injunction did not prevent it, as has been decided by this court. Richardson v. Prince George Justices, 11 Gratt. 190. It seems to follow as a '^consequence, that the right to sue out the scire facias having accrued at the qualification of the administrator, and not having been suspended by the pendency of the injunction, is barred by the act of limitations. In Barker v. Millard, 18 Wend. R. 572, it was held that an injunction would not suspend the running of the statute, and that the proper course in such case is for the court of chancery to restrain the defendant from setting up the statute in an action at law. The case is now provided for by law in üíew York ; but Barker v. Millard arose before that law took effect. So here the case is provided for by the Code, p. 710, § 13 ; but this case arose before the Code took effect, and seems to be governed by the same principle which governed Barker v. Millard. There might be some reason in holding that an injunction would suspend the running of the statute to a scire facias to revive a judgment after a year and a day by or against the same parties, but not to a scire facias to revive a judgment when there is a new party to the suit. In the former case, the only object of the scire facias is to have execution ; which cannot be issued in consequence of the injunction. In the latter, the object is to revive the judgment in the name of a person who was not a party to it. As this must be done, when necessary, before an execution can be issued upon the judgment, there can be no impropriety in doing it pending an injunction, so that when it is dissolved, the plaintiff may be in a situation to sue out execution. A judgment against a decedent, which is enjoined, especially where nothing is done in the injunction suit during the period of limitation, seems to be both within the letter and spirit of the statute, 1 Rev. Code, p. 492, § 17, which declared that no action of debt shall be brought against an executor or administrator, &c., upon a judgment obtained against his testator or intestate, nor shall any scire facias be issued against *any executor or administrator, &c., to revive such judgment after the expiration of five years from the qualification of his executor or administrator, &c. ; and all such judgments, after the expiration of five years, upon which no proceedings shall have been had, shall be deemed to have been paid and discharged ; saving, &c. But while this is the strong inclination of my mind, I do not mean to express a decided opinion upon the question.
In regard to the other questions arisin g in the cause, I concur in the opinion of Judge Tee.
ATTEN, P., and DANIET andSAMUETS, Js., concurred in the opinion of Tee, J.
Judgment affirmed.